UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

WILLIAM M. ESTEY, JR.,

        Petitioner,        6:12-cv-01430-CL

        v.        REPORT AND RECOMMENDATION

JEFF PREMO and
STATE OF OREGON

        Respondents

CLARKE, Magistrate Judge.

Petitioner, an inmate in the custody of the Oregon Department of Corrections, filed a petition under 28 U.S.C. § 2254 challenging his sentence for convictions on twenty counts of Sexual Abuse in the First Degree. In Ground One, petitioner alleges that the State violated his rights under the Double Jeopardy Clause of the Fifth Amendment. In Ground Two, petitioner alleges that the State violated his rights under

1 - FINDINGS AND RECOMMENDATION

the Due Process Clause of the Fourteenth Amendment.

Respondents now move to deny relief on the ground that petitioner's claim in Ground One was denied by a state court decision entitled to deference by this court and that his claim in Ground Two is procedurally defaulted. Response (#21) p. 1-2.

The relevant facts are as follows: Petitioner was charged with one count of Sodomy in the First Degree and twenty counts of Sexual Abuse in the First Degree, all arising out of the sexual abuse of his 12 year old daughter. Exhibit 102.

The jury acquitted petitioner of the sodomy count, but found him guilty on all twenty counts of sexual abuse. Exhibit 101. At sentencing, the trial court explained the sentence he intended to impose as follows:

> [I]t is hard to imagine a more egregious set of facts regarding sex abuse. The jury found you not guilty of sodomy, but certainly the conduct that you displayed with respect to your daughter was about as reprehensible as anybody could engage in for more than a period of a year or better.
>
> What I'm going to do is on Count 2, I will sentence you to the mandatory minimum under Ballot Measure 11 of 75 months in custody to the Corrections Division.
>
> On Count 7, I will sentence you to an additional 75 months in the custody of the Corrections Division, that to be consecutive. I am satisfied not only by virtue of the pleading, but also by virtue of the proof that these were all separate incidents that you were found guilty of.
>
> And therefore ORS 137.123 sub 5 does not apply. In

2 - FINDINGS AND RECOMMENDATION

>    addition, I will sentence you to 75 months under
>    Ballot Measure 11, consecutive on Count 12.
>
>    But the balance of the counts of which there were
>    many, three, four, five, six, eight through eleven,
>    thirteen through sixteen and eighteen through
>    twenty-one, I will make those sentences concurrent.
>    They will be concurrent 75 month sentences
>    concurrent with count two.
>
>                    * * * * *
>
>    The net effect, [petitioner], so it is clear to you
>    is you are sentenced to 225 months in prison on
>    this matter.

Tr. 376-77

In an order signed on the date that petitioner was sentenced, October 6, 1997, the trial judge noted that petitioner had been sentenced to serve 225 months in the custody of the Oregon Department of Corrections, and ordered the Sheriff of Yamhill County to take petitioner into custody. Exhibit 101.

The judgment signed one month later, on November 7, 1997, indicated that the 75 month sentences for Count Seven had been imposed "consecutive to the primary offense Count 2 and concurrent to the other offenses." The 75 month sentence imposed for Count 12 was imposed consecutive to the primary offense Count 2." The judgment also stated that a sentence of 75 months for Count Nine had been imposed "consecutive to the primary offense Count 2 and concurrently

3 - FINDINGS AND RECOMMENDATION

to the other offenses."[1]

On December 11, 1997, Petitioner's trial counsel sent a letter to the court stating that her notes indicated "that Judge Hitchcock sentenced [petitioner] to three consecutive 75 months sentences on counts Two, Seven and Twelve. Your written judgment includes a consecutive sentence on count Nine as well." Exhibit 108, p. 6.

On December 30, 1997, the court issued an amended judgment making the sentence on Count 9 "75 months concurrent to the primary offense, count 2 and concurrently to the other offenses." Exhibit 101. The amended judgment did not alter the sentence regarding Count Seven and Count Twelve. Those sentences remained as stated in the original judgment.

A hearing was held on October 30, 2009, as a result of "some confusion in the Department of Corrections as to the calculation of [petitioner's] sentence." Exhibit 119, p. 2. At the hearing the state argued that the ambiguity in the judgment[2] was created by a "scrivener's error" and that petitioner had been on notice since his sentencing hearing

---

[1] Neither party has addressed the significance, if any, of the fact that the judgment does not state that the sentence for Count 12 is to be imposed "concurrently with the other offenses" as indicated in Counts 7 and 9.

[2] The fact that both Counts Seven and Twelve had been imposed consecutive to Count Two could be interpreted to mean that Counts Seven and Twelve were to run concurrent to each other.

4 - FINDINGS AND RECOMMENDATION

that he had received a sentence of 225 months of incarceration. Accordingly the State argued that the judgment should be corrected to conform to the sentence that the trial court had orally imposed.

A Second Amended Judgment was signed by the trial court on December 1, 2009. Exhibit 101. In the Second Amended Judgment, petitioner was sentenced to 75 months on the primary offense, Count 2. On Count 7, petitioner was sentenced to 75 months "<u>consecutive</u> to the primary offense, count 2, and concurrent to the other offenses." On Count 12, petitioner was sentenced to 75 months <u>consecutive</u> to the primary offense COUNT 2 and to [ ] COUNT 7." <u>Id</u>.

Petitioner appealed alleging two assignments of error. First he argued that the trial court had exceeded its authority under ORS 138.083(1)(a) when it granted the state's motion to correct the judgment. Exhibit 108, p. 7. Second, petitioner argued that the trial court violated petitioner's rights to be free from double jeopardy when it re-sentenced him within a few months of the end of his prison term. The Court of Appeals affirmed, Exhibit 111, and the Oregon Supreme Court denied review. Exhibit 113.

In Ground Two petitioner alleges: "Where the state failed to file a timely appeal petitioner's right to due process was violated when the trial court amended its judgment nearly 12

5 - FINDINGS AND RECOMMENDATION

½ years later to increase petitioner's sentence by 75 months."

Under 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State[.]" Exhaustion occurs when a petitioner has given the state courts a "full and fair" opportunity to consider and resolve all federal claims. Keeney v. Tomayo-Reyes, 504 U.S. 1, 10 (1992). If a petitioner can present a claim to the state's Supreme Court, he must do so to properly exhaust that claim. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).

To "fairly present" a federal claim in state court, habeas petitioners must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996).; see also, Castillo v. McFadden, 399 F.3d 993, 1000 (9th Cir. 2005); see also, Insyxiengmay v. Morgan, 403 F.3d 657, 668 (9th Cir. 2005) ("In [the Ninth Circuit], a petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law."); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (per curiam) (holding that, when a petitioner failed to cite federal case law or mention the federal constitution in his state court briefing, he did not

6 - FINDINGS AND RECOMMENDATION

alert the state court to the federal nature of his claims).

Furthermore, to properly exhaust a claim the petitioner must present the federal claim to the state courts in a procedural context in which the claims' merits will be considered. Castille v. Peoples, 489 U.S. 346, 351-52 (1989); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1984; Turner v. Compoy, 827 F.2d 526, 529 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

If a petitioner has failed to present a federal constitutional claim to the state's highest court (*i.e.*, has failed to exhaust state remedies) and can no longer do so because of a procedural bar, that claim is procedurally defaulted. Boerckel, 526 U.S. at 848, citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). Once a petitioner has procedurally defaulted a claim, federal habeas corpus review is barred unless the petitioner can demonstrate: (1) cause for the procedural default, and (2) actual prejudice from the failure. Edwards v. Carpenter, 529 U.S. 446, 451 (2000), Coleman, 501 U.S. at 750; see also, Wainwright v. Sykes, 433 U.S. 72 (1977); Murray v. Carrier, 477 U.S. 748 (1986); Hughes v. Idaho Bd. of Corr., 800 F.2d 905 (9th Cir. 1986).

Cause for a procedural default exists only if petitioners "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's

7 - FINDINGS AND RECOMMENDATION

procedural rule." Murray, 477 U.S. at 488. Prejudice exists only if petitioners show that the procedural default "worked to [petitioner's] actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Demonstrating a mere possibility of prejudice is insufficient. Id.

Procedural defaults may also be excused by demonstrating a "fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To establish the fundamental miscarriage of justice exception to the exhaustion requirement requires a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 329 (1995); Calderon v. Thompson, 523 U.S. 538, 559 (1998).

Petitioner did not raise the due process claim he alleges in Ground Two to the Oregon Court of Appeals. Direct appeals must be filed not later than 30 days after the judgment or order appealed from was entered in the register, ORS 138.071. Therefore, petitioner cannot now present his due process claim to the Court of Appeals. Petitioner has not established cause and prejudice for his procedural default no established that he is entitled to the fundamental miscarriage of justice exception to the exhaustion requirement. Accordingly, his due process claim is not properly before the court.

In his Petition for Review by the Oregon Supreme Court

petitioner alleged a due process claim similar to the one alleged in the petition before the court. Exhibit 112, p. 4. However, the claim was not raised in a procedural context in which the claims merits would be considered. *See*, *Castillo*, *supra*. (raising a claim for the first time in a petition for discretionary review to the state supreme court, did not 'fairly present' the claim). Petitioner's argument that since "fairness was the heart of Estey's argument to the Court of Appeals ... exhaustion should be found under these circumstances," Brief in Support (#27) p. 10, is not persuasive.

    In Ground One, petitioner alleges:

> **Ground One**: A written judgment which was signed two different times by the original trial judge, now deceased, and has been for years, contained no erroneous terms. Approximately four months from completing the 150 month sentence (written order by original trial judge) a different trial judge modifies the written judgment based on a possible ambiguity at the sentencing hearing. No state or federal agencies argued the written order throughout original appeal process yet when appeals were finished state (trial court) amends written order giving additional 75 months. The long-standing principle that a written order (judgment) controls over an oral pronouncement of sentence. Clearly a violation under Double Jeapordy Clause, the 5th Amendment of the United States Constitution.

Petition (#2) p. 6.

    In his appeal of the Second Amended judgment, petitioner argued that "[t]he trial court violated [petitioner's] right to be free from double jeopardy when it re-sentenced him

9 - FINDINGS AND RECOMMENDATION

within a few months of the end of his prison term." Exhibit 108, p. 19. The Court of Appeals rejected petitioner's claim under the Double Jeopardy Clause without discussion. Exhibit 111. The Oregon Supreme Court denied review. Exhibit 113.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas corpus relief may "not be granted with respect to any claim that was adjudicated on the merits in state court proceedings," unless the adjudication:

>    1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    2.) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented at the State court proceeding.
>
>    28 U.S.C. § 2254(d).

The Supreme Court has explained that in passing the AEDPA, Congress intended to change the habeas corpus field by curbing delays, preventing "re-trials" on federal habeas, and giving effect to state convictions to the extent permissible under the law. Williams v. Taylor, 529 U.S. 362, 404 (2000). In addressing the deference requirements set forth in 28 U.S.C. § 2244(d)(1), the Court specifically found that the "contrary to" and "unreasonable application" clauses of the AEDPA have independent meanings. Id.

In Lockyer v. Andrade, 538 U.S. 63 (2003) the Supreme Court held that "a state court decision is 'contrary to our

10 - FINDINGS AND RECOMMENDATION

clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" Andrade, 538 U.S. at 73. (citations omitted).

The Court further held that "under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of the clearly established law must be objectively unreasonable." Andrade, 538 U.S. at 75.

The Andrade court further clarified that under 28 U.S.C. § 2254(d) a state court's decision is not necessarily "objectively unreasonable" even if it is "clear error." "It is not enough that a federal habeas court, in its independent review of the legal question' is left with a 'firm conviction' that the state court was erroneous. We have held precisely the opposite: Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent

11 - FINDINGS AND RECOMMENDATION

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must be objectively unreasonable." Andrade, 538 U.S. at 75-76.

It is not an "objectively unreasonable application of clearly established federal law" for a state court to decline to apply a specific legal rule that has not been squarely established by the Supreme Court. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

Even incorrect state-court decisions must be given deference, unless they are "contrary to" or "objectively unreasonable" applications of a Supreme Court holding. This is true even if the state courts do not fully articulate their reasoning. Delgado v. Lewis, 223 F.3d 976. 982 (9th Cir. 2000) ["federal court review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of the controlling federal law."].

Finally, under 28 U.S.C. § 2254(d)(2), "factual determinations by a state court are presumed to be correct absent clear and convincing evidence to the contrary." Miller-el v. Cockrell, 537 U.S. 322, 340 (2003). The AEDPA thus sets out a "highly deferential standard for evaluating state

12 - FINDINGS AND RECOMMENDATION

court rulings," which requires that state court decisions be given the benefit of the doubt. Woodford v. Visciotti, 537 U.S. 19 (2003) (*per curiam*), quoting Lindh v. Murphey, 521 U.S. 320, 333 n. 7 (1997).

The Double Jeopardy Clause of the Fifth Amendment protects against prosecutions after an acquittal or a conviction, and it protects against multiple punishments for the same offense. Ohio v. Johnson, 467 U.S. 493, 498 (1984). However, the double jeopardy considerations that bar re-prosecution after an acquittal do not prohibit review of a sentence. United States v. DiFrancesco, 449 U.S. 117, 136 (1980).

"The *DiFrancesco* Court held that a defendant 'has no expectation of finality in his sentence until the appeal is concluded or the time for appeal has expired,' but it did not indicate exactly when during the service of a sentence such an expectation arises." United States v. Daddino, 5 F.3d 262 (7th Cir. 1993) (*citing DiFrancesco*, 449 U.S. at 136).

The Ninth Circuit has suggested that such an expectation can arise before release. *See*, United States v. Arrellano-Rios, 799 F.2d 520, 524 (9th Cir. 1986). However, even the imposition of a new sentence constitutes a second punishment only if the defendant had a legitimate expectation of finality of his original sentence by the time the new sentence was

13 - FINDINGS AND RECOMMENDATION

imposed. United States v. Ranmall, 340 F.3d 798, 800 (9th Cir. 2003).

Petitioner argues that he had a "legitimate expectation" of the finality of the sentence the trial judge imposed in 1977. I agree. The sentence announced by the trial judge at petitioner's sentencing hearing was unambiguous. The trial court imposed three 75-month sentences to be served consecutively and ordered that the remainder of the sentences be served concurrently. The trial court stated: "The net effect, [petitioner], so it is clear to you is you are sentenced to 225 months in prison on this matter."

Although petitioner may have *hoped* that the ambiguity in the written judgment dated December 30, 1997, might be construed in his favor, (ie. interpreted as imposing a sentence totaling 150 months), he had no reasonable expectation of a sentence other than what was unequivocally announced in open court at the sentencing hearing.³

Petitioner's characterization of the December 30, 1997, judgment as an "amended written judgment," and the Second Amended Judgment as "modifying" the sentence, is not

---

³As noted in *Daddino*, if the oral and written sentence conflict, the oral language governs. Citing United States v. Makres, 851 F.2d 1016, 1019 (7th Cir. 1988); *see also*, United States v. Roberts, 933 F.2d 517, 519 n. 1 (7th Cir. 1991). The *Daddino* court went on to clarify that "[t]his rule can only prevail, however, if the oral language is unambiguous." 5 F.3d at 266. In this case, the oral language was unambiguous.

14 - FINDINGS AND RECOMMENDATION

persuasive. The sentence challenged by petitioner in this proceeding is precisely that announced by the sentencing judge. The Second Amended Judgment merely corrected the prior judgments to accurately reflect the court's decree.

It is unfortunate that the ambiguity in the original and first amended judgments may have given petitioner a hope of avoiding having to serve the third consecutive 75 month sentence, especially where the matter was not clarified until petitioner had almost completed the second of the three consecutive sentences imposed.

However, for the reasons stated above, I find that the state court decision to correct the written judgment to reflect the sentence imposed by the sentencing judge is not contrary to or involve an unreasonable application of clearly established federal law or the result of an unreasonable determination of facts, and therefore is entitled to deference by this court. Moreover, I find that state court decision was correct on the merits and that the challenged judgment did not violate petitioner's rights under the Double Jeopardy Clause.

Petitioner's Petition (#2) should be denied and the Clerk should be directed to enter a judgment dismissing this proceeding.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice

15 - FINDINGS AND RECOMMENDATION

of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

## *Certificate of Appealability*

*Should petitioner appeal, a certificate of appealability should be denied as petitioner has not made a substantial showing of the denial of a constitutional right. See, 28 U.S.C. § 2253(c)(2).*

DATED this 10 day of October, 2013.

Mark D. Clarke
United States Magistrate Judge

16 - FINDINGS AND RECOMMENDATION